**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

                           Crim. No. 1:16-cr-397-NLH

    v.                          **OPINION**

TERRELLE NELSON

**APPEARANCES:**

TERRELLE NELSON
223 ROCKLAND AVE.
MAPLE SHADE, NJ 08052

     *Pro Se Defendant*

ANDREW D'AVERSA
DOJ-USAO
401 MARKET STREET - 4TH FLOOR
CAMDEN, NJ 08101

     *Attorney for United States*

**HILLMAN**, District Judge

Before the Court is Terrelle Nelson's ("Nelson" or "Defendant") motion for early termination of supervised release. (ECF 49). The Government opposes the motion. (ECF 52). For the reasons that follow, the Motion will be denied.

## I.   Background

On June 16, 2016, a drug detection canine alerted to the presence of illegal narcotics inside a parcel mailed from Arizona to New Jersey. (ECF 1 at 4). That same day a federal

search warrant was issued to search the parcel.  (Id. at 4-5).
Upon opening the parcel, the postal inspectors discovered a
crystalline substance, which was field tested and identified as
approximately 2.2 pounds of methamphetamine.  (Id. at 5).  On
June 17, 2016, a federal search warrant was issued for the
address on the parcel.  (Id.).  The parcel was repackaged with a
sham bundle and delivered to the address on the parcel.  (Id.).
Later that day, Defendant entered the property.  (Id. at 6).

Upon execution of the search warrant on the address,
officers discovered $30,000; approximately a pound of heroin;
approximately 10 ounces of marijuana; approximately 1.4 grams of
cocaine; and approximately 9.7 grams of methamphetamine.  (Id.
at 6-7).  Officers also discovered approximately 154 Percocet
pills on Defendant's person.  (Id. at 7).  At the time of the
search, Defendant was outside near a shed.  (Id.).  Part of the
box from the parcel was discovered under a pile of leaves under
the shed, and a few feet away a .38 Smith and Wesson revolver
was also discovered hidden under leaves.  (Id.).

Defendant admitted to officers that the $30,000 was
obtained from selling heroin and that he had paid $8,000 for the
methamphetamine that was delivered in the parcel, which he
intended to sell.  (Id.).

In December 2016, pursuant to a Superseding Indictment, a
grand jury indicted Defendant on two counts, including, (1)

Conspiracy to distribute and possess 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, contrary to Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), in violations of Title 21 U.S.C. § 846; and (2) felon in possession of a firearm, in violation of Title 18 U.S.C. § 922(g)(1) and Title 18 U.S.C. § 2.  (ECF 31).

On February 10, 2017, Defendant plead guilty to Count Two of the Superseding Indictment, felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (ECF 37).  Pursuant to the agreement, in consideration of Defendant entering the plea, the Government agreed not to initiate further criminal charges related to distribution and possession with the intent to distributed methamphetamine, cocaine, marijuana, or prescription pills and agreed to move to dismiss Count One of the Superseding Indictment.  (Id.).

On May 22, 2017, this Court sentenced Defendant to imprisonment for a term of 84 months and supervised release for a term of three years.  (ECF 40, 41).  Defendant began his 3-year term of supervised release on August 31, 2022. (ECF 48).

On April 21, 2023, Probation filed a Report on Individual Under Supervision, advising that Defendant had two drug screens that were positive for marijuana.  (Id.).  Defendant admitted to

use of a Cannabis Sativa Seed Oil.  (Id.).  He was directed to discontinue use, and no Court action was taken.  (Id.).

On January 24, 2024, Defendant filed a Motion for Early Termination of Supervised Release.  (ECF 49).  The Government filed its Opposition on February 12, 2024.  (ECF 52).

## II.  Legal Standard

It is Nelson's burden, "as the party receiving the benefit of early termination, to demonstrate that such a course of action is justified."  United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006).  The Court's decision is discretionary after examination of the record as whole and consideration of the relevant statutory factors.  Melvin, 978 F.3d at 52 ("The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.").

Further, in exercising its discretion, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)."  Id.  Nonetheless, while such factors are not required "if a sentence was 'sufficient, but not greater than necessary' when first pronounced," as § 3553(a) requires, a reviewing court would generally "expect that something will have

4

changed in the interim that would justify an early end to a term of supervised release."  Id.

Taking into consideration both Nelson's conduct and the interest of justice, the Court concurs with the Government that early termination of supervised release is not warranted.

### III. **Discussion**

This Court will first address Defendant's Motion for Appointment of Counsel.  Second, while Defendant brought his Motion pursuant to 18 U.S.C. § 3583(e)(1), he also referenced Amendment 821 to the United States Sentencing Guidelines.  Thus, this Court will address Defendant's eligibility for a sentence reduction pursuant to Amendment 821, and then proceed to an assessment of whether the § 3553(a) factors justify early termination of Defendant's sentence.

#### a. **Motion for Appointment of Counsel**

Defendant requests appointment of counsel to represent him in his Motion for Early Termination of Supervised Release.  He avers that "the complexities of preparing and researching his § 3583(e)(1) motion, coupled with his vast inexperience in the law, places him at a great disadvantage."  (ECF 49-1 at 1).

The decision to appoint pro bono counsel involves a two-step analysis.  First, a court must determine as a threshold matter whether the party's claim has "some merit in fact and law."  Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).  If a

court finds that the action arguably has merit, it should then
consider the following factors (hereinafter, the "Tabron/Parham
factors"):

> (1) the [party's] ability to present his or her own case;
>
> (2) the complexity of the legal issues;
>
> (3) the degree to which factual investigation will be
> necessary and the ability of the [party] to pursue such
> investigation;
>
> (4) the amount a case is likely to turn on credibility
> determinations;
>
> (5) whether the case will require the testimony of expert
> witnesses;
>
> (6) whether the [party] can attain and afford counsel on
> his own behalf.

Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997) (citing
Tabron, 6 F.3d at 155-56, 157 n.5).  This list of factors is not
exhaustive, nor is any one factor determinative.  Id. at 458.
Rather, the Tabron/Parham factors serve as a guidepost to ensure
that courts only appoint counsel in non-frivolous matters.  Id.

     Engaging in the first step of the analysis of whether
counsel should be appointed, this Court notes that Defendant
seeks relief one two separate grounds.  First, Defendant alludes
to Amendment 821 of the United States Sentencing Guidelines,
arguing that he "qualifies to have status points eliminated from
his Criminal History Category which would make [him] eligible
for a reduction."  (ECF 49 at 3).  On this point, Defendant's
Motion does not have arguable merit, as Defendant's guideline

range is unchanged by Amendment 821, as discussed in more detail below.

On the other hand, Defendant is eligible to seek relief pursuant to 18 U.S.C. § 3583(e)(1).  Defendant had served approximately 18 months of his supervised release term at the time he filed his Motion.  A defendant is eligible for early termination after serving one year of supervision.  See 18 U.S.C. § 3583(e)(1).  Thus, while the Court must weigh whether early termination is in the interest of justice, there is some legal support for Defendant's Motion.  Thus, the Court will proceed to consideration of the Tabron factors.

First, Defendant has demonstrated his ability to file a typed motion, proving that he has access to resources to draft a motion and get it to the Court.  Thus, Defendant's ability to present his or her own case weighs against appointment of counsel.

Next, Defendant has appropriately pointed to the applicable law government his motion.  In addition, the legal issues here largely rely on application of clear factors prescribed by statute and referenced by Defendant.  Accordingly, the complexity of the legal issues weighs against appointment of counsel.

Defendant's ability to support his Motion does not require factual investigation.  Rather, Defendant need only provide

information related to his present circumstances.  Defendant has
not pointed to any information that he has been unable to obtain
that would support his Motion.  The degree to which factual
investigation will be necessary weighs against appointment of
counsel.

Defendant seeks counsel for the discrete purpose of
assisting with his Motion, which will not require him to engage
in any proceedings related to credibility determinations or
expert witnesses.  Thus, the lack of need for counsel at any
court proceedings or to engage in complicated analysis of
witnesses weighs against appointment of counsel.

While Defendant did not make any specific representation on
this point, this Court recognizes that he is presently
unemployed, and may not be able to afford counsel.  If so, this
factor would weigh in favor of appointment of counsel.  Overall,
the Tabron factors weigh against appointing counsel.
Accordingly, Defendant's Motion for Appointment of Counsel will
be denied.

### b. Amendment to U.S.S.G. 4A1.2(d)

Defendant asks the Court to consider changes to the
Sentencing Guidelines.  He states that "the current offense was
committed while under probation for a previous offense.
[Defendant] qualifies to have status points eliminated from his
Criminal History Category which would make [Defendant] eligible

for a reduction with respect to his criminal matter." (ECF 49 at 3).

The Government responds that "[a]s part of his plea agreement, Nelson agreed that the Guidelines effective on November 1, 2016 applies to this case." (ECF 52 at 7). The Government states that "[t]he agreement remains binding and forecloses such a challenge." (ECF 52 at 7). In addition, the Government explains that "whether 1 or 2 criminal history points were added would not change his criminal history category, V. Thus, his Guidelines range would remain 100-120 months' imprisonment under the current or former Guidelines. And even if Nelson's criminal history category was reduced to IV, his sentence of 84 months' imprisonment is at the absolute lowest end of that range, 84-105 months' imprisonment." (Id. at 7-8).

Prior to Amendment 821, offenders were given two additional criminal history points if they committed the offense of conviction while under a criminal justice sentence. Sentencing Guidelines for United States Courts, 88 FR 28254-01 (effective Nov. 1, 2023); U.S.S.G. § 4A1.1(e). Part A of Amendment 821 limited the application of these "status points." First, for offenders with seven or more criminal history points, the additional criminal history points, referred to as status points, is reduced from two additional points to only one. Id.

Offenders with six or fewer criminal history points no longer receive any status points.  Id.

First, as the Government argued, Defendant's plea agreement explains the wavier of certain appellate and post-sentencing rights, and specifically states, "[t]he version of the United States Sentencing Guidelines effective November 1, 2016 applies to this case."  (ECF 37 at 3, 7).

In addition, before including any status points, Defendant's criminal history score at the time of sentencing was calculated as a 10.  With the two-status points he had a criminal history score of 12.  Thus, he would only be eligible, at most, for a one-point reduction.  This would not change his criminal history category.  His criminal history category was calculated as category V at sentencing, which is the category for criminal history scores of 10 to 12.  Even if Defendant's criminal history score were reduced by one point, he would still be category V.  His guideline range would thus remain the same as it was at sentencing, 100 to 120 months and not more than three years of supervised release.  Defendant "is not eligible for a sentence reduction because the amendment does not lower his applicable guideline range."  United States v. Muldrow, No. CR 20-14, 2024 WL 665180, at *2 (E.D. Pa. Feb. 16, 2024).

### c. **The Relevant § 3553(a) Factors Weigh Against Early Termination**

10

In support of his request for early termination under §
3583, Defendant states that he "has led a law-abiding life since
he was released from federal incarceration" and "has paid all
court-ordered restitution in full."  (ECF 49 at 2).  He argues
that he "has benefited from the rehabilitative effect which
supervised release was designed to provide, and has demonstrated
that he is no longer in need of further supervision to achieve
rehabilitation."  (Id.).

As the Circuit explained in Melvin, early termination of
supervised release is generally proper only where new or
unforeseen circumstances warrant it, "because, if a sentence was
'sufficient, but not greater than necessary' when first
pronounced, 18 U.S.C. § 3553(a), we would expect that something
will have changed in the interim that would justify an early end
to a term of supervised release."  978 F.3d at 53.

Of course, Nelson's compliance with the law while on
supervised release and his successful return to society are
commendable.  But such compliance is not a new or unforeseen
occurrence.  The Court expects defendants to comply with the
conditions of their supervised release and seek community
connections and to be good citizens upon their return to
society.  As one court has noted, if that were enough and every
formerly incarcerated defendant who satisfied all the conditions
of her or her release received early termination, the exception

11

would swallow the rule.  United States v. Guilliatt, Criminal
Action No. 01-408, 2005 WL 589354, at *1 (E.D. Pa. 2005); see
also United States v. Lohman, Case No. 02-CR-219, 2007 WL
1430282, at *1 (E.D. Wis. 2007) (holding that if simple
compliance were sufficient for early termination, "every
defendant who avoided revocation would be eligible for early
termination."). Here, Nelson's success while on supervised
release thus far, while laudable, is insufficient alone to
warrant early termination.

With respect to the circumstances of his offense, 18 U.S.C.
§ 3553(a)(1), Defendant states that he is a non-violent
offender.  (ECF 49 at 2).  This Court notes that the
circumstances of the offense included Defendant's involvement
with a significant volume of drugs including heroin, marijuana,
cocaine, methamphetamine, and Percocet as well as significant
proceeds from the sale of drugs.  Moreover, the conviction in
this case is based on possession of a gun.  At sentencing, this
Court described this as "a very serious offense." (ECF 42 at
62:15).  This factor weighs against early termination.

With respect to the history and characteristics of the
defendant, 18 U.S.C. § 3553(a)(1), Defendant states that he "has
deep ties to his community and enjoys exceptionally strong
family support."  (ECF 49 at 3).  This Court noted his family
support at the time of sentencing.  (ECF 42 at 59:12-14).

Strong family and community support weighs in favor of early termination, however other characteristics render this factor neutral.  At the time of sentencing, Defendant had a "fairly serious criminal history" and had been arrested multiple times even after participating in programing like Drug Court.  (ECF 42 at 60:16).  Although Defendant avers that he has "benefited from the rehabilitative effect which supervised release," he has not pointed to any specifics.  Other than to say he has strong community and family support, Defendant has not explained any particular community involvement or pro-social activities that he engages in.

With respect to the need for the sentence imposed, 18 U.S.C. § 3553(a)(2), Defendant states that "[t]he likelihood of [him] re-offending is very low."  (ECF 49 at 3).  Defendant does not provide specific support for this conclusion, other than to say he has benefited from the rehabilitative nature of supervised release.  Moreover, even setting aside the question of specific deterrence, a sentence may also be justified by the need for general deterrence.  At sentencing, this Court explained that "[i]f you deal with this volume of drugs, this variety of drugs, protect those drugs with a gun, the public has a right to know and others ought to know, as a matter of general deterrence, that there will be a substantial jail sentence." (ECF 42 at 62:17-21).  In addition, at sentencing this Court

13

expressed that due to the seriousness of the offense, "there ought to be a substantial sentence to show respect for the law and to provide just punishment." (Id. at 62:14-17).  This factor weighs against early termination.

Defendant explains that he "has developed an unexpected disability" and is "currently unable to work."  He states that his wife is also disabled, and that they care for their family. (ECF 49 at 3).  While this Court is sensitive to the difficulties of obtaining employment upon re-entry, and further limitations based on disability, Nelson has not pointed to any connection between his inability to work, which he explains is based on his disability, and his supervised release status.

In sum, after the Court's consideration of the relevant § 3553(a) factors, Nelson has not met his burden of establishing that early termination "is warranted by" his "conduct" and in "the interest of justice" as the statute requires.  18 U.S.C. § 3583(e)(1).

**IV.**   <u>**Conclusion**</u>

For the reasons set forth above, Defendant's Motion for Early Termination of Supervised Release (ECF 49) will be denied.

An accompanying Order will issue.


Date: February 27, 2024          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.